AO 106 (Rev. 04/10) Application for a Search Warrant

AUTHORIZED AND APPROVED/DATE: s/Drew E. Davis 2/11/26

# UNITED STATES DISTRICT COURT

for the

Western District of Oklahoma

FILED

FEB 11 2026

JOAN KANE, CLERK
U.S. DIST. COURT, WESTERN DIST. OKLA.
BY MW, DEPUTY

In the Matter of the Search of

*(Briefly describe the property to be searched or identify the person by name and address)*

a Pink Apple iPhone, a Gray Apple iPhone, a Silver Cricket Smartphone, a Green Cricket Smartphone, a Black Samsung Smartphone, a Black Apple iPhone, a Black Apple iPhone, and Red Apple iPhone currently located at the Drug Enforcement Administration Office within the Western District of Oklahoma

Case No. MJ-26-87-SM

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A

located in the Western District of Oklahoma, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

- ☑ evidence of a crime;
- ☑ contraband, fruits of crime, or other items illegally possessed;
- ☑ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| *Code Section* | *Offense Description* |
|---|---|
| 21 U.S.C. § 846 | Drug Conspiracy |

The application is based on these facts:

See attached Affidavit

- ☑ Continued on the attached sheet.
- ☐ Delayed notice of _____ days (give exact ending date if more than 30 days: ___________ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

[signature]
*Applicant's signature*

CECIL NAVE, TFO DEA
*Printed name and title*

Sworn to before me and signed in my presence.

Date: Feb. 11, 2026

[signature]
*Judge's signature*

City and state: Oklahoma City, Oklahoma

SUZANNE MITCHELL, U.S. MAGISTRATE JUDGE
*Printed name and title*

IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| **A PINK APPLE IPHONE, GRAY APPLE IPHONE, SILVER CRICKET SMARTPHONE, GREEN CRICKET SMARTPHONE, BLACK SAMSUNG SMARTPHONE, BLACK APPLE IPHONE, BLACK APPLE IPHONE, AND RED APPLE IPHONE CURRENTLY LOCATED AT THE DRUG ENFORCEMENT ADMINISTRATION OFFICE WITHIN THE WESTERN DISTRICT OF OKLAHOMA** | **Case No. M-26-** 87 **-SM** |

**AFFIDAVIT IN SUPPORT OF SEARCH WARRANT**

I, Cecil Nave, a Task Force Officer with the Drug Enforcement Administration (DEA), having been duly sworn, depose and state as follows:

**INTRODUCTION AND OFFICER BACKGROUND**

1. I am a Task Force Officer (TFO) with the Drug Enforcement Administration (DEA) and have been since January 2025. As such, I am an investigative and law enforcement officer of the United States authorized to conduct investigations of, and to make arrests and seizures for, offenses enumerated in, *inter alia*, the Controlled Substances Act, Title 21, United States Code. I am currently assigned to the Oklahoma City Division of the DEA as a TFO from my parent agency of the Oklahoma City Police Department. Within the Oklahoma City Police Department, I am a Detective

assigned to the Major Violators Unit, whose mission is to investigate and assist in the prosecution of high-level narcotics trafficking organizations.

2. Since becoming a Task Force Officer, I have conducted multiple investigations targeting drug trafficking organizations, some of which involved the unlawful distribution of controlled substances in violation of 21 U.S.C. §§ 841(a)(1) and 846. I have experience in the methods used in drug trafficking investigations, including but not limited to, debriefing cooperating witnesses and cooperating sources, the preparation and execution of search warrants, and making arrests. In light of this experience, I know the following:

a. I am aware of the methods in which drug couriers and distributors associated with Drug Trafficking Organizations (DTOs) often use electronic devices, including computers, tablets, cell phones, and other electronic storage devices, to communicate and coordinate drug transactions and execute electronic transactions which can, in turn, create automatic records and documentation of the drug transactions;

b. I am aware that it is particularly common for individuals engaged in the sale and distribution of illegal drugs to use electronic devices to track and document financial transactions;

c. I am aware that individuals engaged in the sale and distribution of illegal drugs will frequently keep contact information and other evidence of their financial and drug dealings with DTOs on cellular phones, computers, tablets, and other storage devices that they often keep on or near their person;

d. I am also aware that individuals engaged in the sale and distribution of illegal drugs will often use cellular phones to further their financial businesses using digital

communication, including, but not limited to, e-mail and instant messaging; and

e. I am aware that individuals involved in transporting illegal drugs will often use electronic devices to communicate with the individuals for whom they are transporting the drugs, including coordinating addresses for pickups and deliveries, communicating about status of the transportation, especially over long distances, and communicating to confirm successful deliveries.

3. This Affidavit is based upon my personal investigation and upon information received from other law enforcement officers and agents and may not be inclusive of all evidence or information available or of all facts known to me relative to this investigation. Rather, I have set forth only the facts that I believe are necessary to establish probable cause for the requested warrant.

## IDENTIFICATION OF THE DEVICES TO BE EXAMINED

4. I make this Affidavit in support of an application for a search warrant authorizing the examination of eight cellular electronic devices: (1) a pink Apple iPhone, seized from Emely Enriques Barrera (BARRERA); (2) a gray Apple iPhone, seized from Jhon Manuel Guerrero Hernandez (HERNANDEZ); (3) a silver Cricket smartphone, seized from the driver-side door pocket of the Nissan Altima; (4) a green Cricket smartphone, seized from the driver-side door pocket of the Nissan Altima; (5) a black Samsung smartphone, seized from the driver-side door pocket of the Nissan Altima; (6) a black Apple iPhone, seized from the driver-side door pocket of the Nissan

Altima; (7) a black Apple iPhone, seized from the driver-side door pocket of the Nissan Altima; and (8) a red Apple iPhone, seized from the driver-side door pocket of the Nissan Altima, as further described in **Attachment A**, and collectively referred to as the **SUBJECT DEVICES**, for evidence of a drug conspiracy in violation of 21 U.S.C. § 846.

5. The **SUBJECT DEVICES** are currently securely stored at the DEA Oklahoma City Office, within the Western District of Oklahoma. The applied-for warrant would authorize the forensic examination of the **SUBJECT DEVICES** for the purpose of identifying electronically stored data particularly described in **Attachment B**.

6. On September 18, 2025, an Oklahoma County District Judge issued a search warrant for the same **SUBJECT DEVICES**. *See* Oklahoma County District Court, SW-2026-19. That search warrant was previously executed. Out of an abundance of caution, I am seeking this federal search warrant for the same **SUBJECT DEVICES**. None of the information recovered from **SUBJECT DEVICES** as a result of executing the original Oklahoma County search warrant has been included in this Affidavit.

**PROBABLE CAUSE**

7. On August 14, 2025, Oklahoma County Sherrif's Office (OCSO) deputies, working with the Criminal Interdiction Team of Central Oklahoma (CITCO), observed a black Nissan Altima (Arizona tag CSK4646), and a silver

Toyota Camry (Arizona tag T2A8HL) travelling eastbound through the construction zone near Choctaw, Oklahoma, within the Western District of Oklahoma.

8. At one point, deputies observed the Nissan Altima following the Toyota Camry at an unsafe distance, within one car length. The deputies then observed both cars crossing the fog line while exiting the off ramp for South Choctaw Road. OCSO Deputy Pettus subsequently pulled behind the Nissan Altima and activated his lights to initiate a traffic stop on the Nissan Altima near Interstate 40 and South Choctaw Road.

9. While at the stoplight at Choctaw road, located at the end of the interstate offramp, deputies observed the driver of the Altima appear to communicate with the occupants of the Camry. Once the traffic light turned green, the Altima appeared to wait for the Camry to advance through the intersection and leave the scene heading northbound before slowly turning southbound, and eventually coming to a stop at the E-Express Truck Stop located at 7501 S. Choctaw Road.

*First Stop of the Nissan Altima*

10. Officers identified Angel Gustavo Soto (SOTO) (driver) and Jenevie Monique Llamas (LLAMAS) (front seat passenger) as the occupants of the Nissan Altima. When asked where they were going, LLAMAS stated that

they were heading to Alabama. When separately asked the same question, SOTO stated they were going to a wedding in Oklahoma City.

11. After smelling an odor of marijuana coming from the Nissan Altima, the deputies performed a probable cause search of the car. Inside the vehicle, deputies located:

a. a loaded pistol under the front passenger seat,

b. several white pills, and

c. a backpack containing:

i. blunt rolling papers,

ii. a digital scale, and

iii. a bag containing a substance that appeared, to the officers, to be consistent with methamphetamine or cocaine.

12. Inside the trunk of the vehicle, deputies located two spare tires with differing lug patterns and tools.

13. Although SOTO and LLAMAS denied traveling with the Camry, both license plate tags of the Altima and Camry were run through a license plate reader (LPR) system, and the deputies were able to confirm that both vehicles had traveled in tandem along Interstate 40 from Albuquerque, New Mexico, through the Texas Panhandle, and through Oklahoma.

14. Based on their training and experience, the deputies surmised that that the Nissan Altima may have been a decoy vehicle, and that the Toyota Camry may be loaded with narcotics housed in its spare tire compartment.

15. After the deputies performed a criminal history check on both SOTO and LLAMAS, they disassembled the firearm and placed it in the trunk of the Altima. Officers then allowed SOTO and LLAMAS to leave the scene with their possessions.

*The Toyota Camry*

16. Later, in the evening of August 14, 2025, officers located the Toyota Camry at the Best Western Plus Hotel at 2651 Market Blvd, Choctaw, Oklahoma, within the Western District of Oklahoma. There, a different deputy observed a male and female exit the Camry and enter the hotel lobby. Once the deputy confirmed the license plate tag, he detained both occupants who each had a cellphone in their possession:

a. The male was identified as Jhon Manuel Guerrero Hernandez (HERNANDEZ) who was in possession of a **gray Apple iPhone**;

b. The female was identified as Emely Enriquez Barrera (BARRERA) who was in possession of a **pink Apple iPhone**.

17. A drug canine was called to the scene and conducted an open-air sniff of the Camry. The dog positively alerted to the presence of narcotics, and a probable cause search of the vehicle then took place. Inside the Camry,

officers located approximately 65 kilograms of methamphetamine in the rear quarter panels, rear passenger doors, and the spare tire well area. Both HERNANDEZ and BARRERA were then placed under arrest.

*Second Stop of the Nissan Altima*

18. Several hours later, at approximately 1:38 a.m. on August 15, 2025, Midwest City Police Department officers stopped the same Nissan Altima that had been stopped previously at Interstate 40 and Choctaw Road near the 7100 block of SE 15th Street in Midwest City, Oklahoma, after observing the Altima commit multiple traffic violations. Officers, once again, identified SOTO (driver) and LLAMAS (front seat passenger) as the occupants of the Nissan Altima. A drug canine conducted a free air sniff around the vehicle and positively alerted to the presence of narcotics. Inside the Altima, officers located:

a. a loaded firearm under the front passenger seat;

b. a plastic bag containing pills that lab tested positive for the presence of Alprazolam (commonly known as Xanax);

c. a digital scale;

d. a bag containing a substance that did not test positive for the presence of a controlled substance; and

e. six cellphones in the driver's side door pocket of the Altima where SOTO had been seated:

    i. a **silver Cricket smartphone**;

ii. a **green Cricket smartphone**;

iii. a **black Samsung smartphone**;

iv. a **black Apple iPhone**;

v. a **black Apple iPhone**; and

vi. a **red Apple iPhone**.

19. Additionally, officers located an "El Mayo" hat from the back passenger side of the vehicle. Based on my training and experience, I am aware that a former Mexican drug lord of the Sinaloa Cartel known as Ismael Zambada García, a/k/a El Mayo, was arrested in the United States in 2024.

20. When Midwest City Police Department officers performed a criminal history check, they determined that SOTO had, in fact, been convicted of a felony offense in the State of Arizona and, therefore, could not lawfully possess a firearm. Additionally, officers were alerted that SOTO and LLAMAS were suspects of a drug conspiracy involving HERNANDEZ and BARRERA. SOTO and LLAMAS were then taken into custody.

21. Based on my training and experience, I know that it is common practice among drug traffickers to travel in tandem when delivering large quantities of narcotics so that each car can keep eyes on the other to help evade law enforcement and protect the load of narcotics.

22. Based on my training and experience, I know that those engaged in drug conspiracies often use cellular devices to plan and coordinate drug

trafficking operations and to communicate with other co-conspirators. These cellular devices often contain contact lists, call logs, messages, photographs, videos, and other notes which relate to trafficking and distributing controlled substances.

23. Based on my training and experience, I know that those engaged in drug trafficking commonly use multiple cellphones to coordinate drug trafficking operations to evade law enforcement by limiting conversations on any one particular device.

24. Accordingly, there is probable cause to believe that the **SUBJECT DEVICES** will contain evidence of a drug conspiracy within the Western District of Oklahoma, and elsewhere.

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

25. Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time. Cellular phones, and specifically iPhones, have the ability to: serve as a wireless telephone, digital camera, portable media player, and GPS navigation device, access the Internet, and use manufacturer installed, as well as downloaded, applications to conduct basic computing and data services. Similarly, things that have been viewed via the Internet are typically stored for some period of time on iPhones. This information can sometimes be recovered with forensic tools.

26. There is probable cause to believe that things that were once stored on the **SUBJECT DEVICES** may still be stored there, at least for the following reasons:

a. Based on my knowledge, training, and experience, I know that computer files or remnants of such files can be recovered months, or even years, after they have been downloaded onto a storage medium, deleted, or viewed via the Internet. Electronic files downloaded to a storage medium can be stored for years at little or no cost. Even when files have been deleted, they can be recovered months or years later using forensic tools. This is so because when a person "deletes" a file on a computer or cellular device, the data contained in the file does not actually disappear; rather, that data remains on the storage medium until it is overwritten by new data.

b. Therefore, deleted files, or remnants of deleted files, may reside in free space or slack space—that is, in space on the storage medium that is not currently being used by an active file—for long periods of time before they are overwritten. In addition, a computer or cellular phone's operating system may also keep a record of deleted data in a "swap" or "recovery."

c. Similarly, files that have been viewed via the Internet are sometimes automatically downloaded into a temporary Internet directory or "cache."

27. *Forensic evidence.* As further described in **Attachment B**, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the **SUBJECT DEVICES** were used, the purpose of their use, who used them, and when.

There is probable cause to believe that this forensic electronic evidence might be on the **SUBJECT DEVICES** because:

a. Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file). Virtual memory paging systems can leave traces of information on the storage medium that show what tasks and processes were recently active. Web browsers, e-mail programs, and chat programs store configuration information on the storage medium that can reveal information such as online nicknames and passwords. Operating systems can record additional information, such as the attachment of peripherals, the attachment of USB flash storage devices or other external storage media, and the times the computer was in use. File systems can record information about the dates files were created and the sequence in which they were created.

b. Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

c. A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

d. The process of identifying the exact electronically stored information on a storage medium that is necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on an electronic device is evidence may depend on other information stored on the device and the application of knowledge about how that particular device behaves.

Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

e. Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

28. *Nature of examination.* Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the **SUBJECT DEVICES** consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the devices to human inspection in order to determine whether it is evidence described by the warrant.

29. *Manner of execution.* Because this warrant seeks only permission to examine devices already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

**CONCLUSION**

30. In light of the foregoing, I submit that this Affidavit supports probable cause for a search warrant authorizing the examination of the **SUBJECT DEVICES** described in **Attachment A** to seek the items described in **Attachment B**.

Respectfully submitted,

CECIL NAVE
Task Force Officer
Drug Enforcement Administration

Sworn and subscribed to before me this 11th day of February 2026.

SUZANNE MITCHELL
United States Magistrate Judge
Western District of Oklahoma

## ATTACHMENT A

The property to be searched is:

1. a pink Apple iPhone, seized from Emely Enriquez Barrera;

2. a gray Apple iPhone, seized from Jhon Manuel Guerrero Hernandez;

3. a silver Cricket smartphone (IMEI: 863454071610625), seized from the driver-side door pocket of the Nissan Altima;

4. a green Cricket smartphone, seized from the driver-side door pocket of the Nissan Altima;

5. a black Samsung smartphone (IMEI 355819213923075), seized from the driver-side door pocket of the Nissan Altima;

6. a black Apple iPhone, seized from the driver-side door pocket of the Nissan Altima;

7. a black Apple iPhone, seized from the driver-side door pocket of the Nissan Altima; and

8. a red Apple iPhone, seized from the driver-side door pocket of the Nissan Altima,

(hereinafter the **SUBJECT DEVICES**).

The **SUBJECT DEVICES** are currently in possession of the DEA located at 901 NE 122nd St, Oklahoma City, Oklahoma 73114, within the Western District of Oklahoma, and are shown below.

This warrant authorizes a review of electronic storage media and electronically stored information seized or copied pursuant to this warrant in order to locate evidence, fruits, and instrumentalities described in this warrant. The review of this electronic data may be conducted by any

government personnel assisting in the investigation, who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, and technical experts. Pursuant to this warrant, DEA may deliver a complete copy of the seized or copied electronic data to the custody and control of attorneys for the government and their support staff for their independent review.



**1. Pink Apple iPhone, seized from Emely Enriquez Barrera (pictured directly above)**





**2. Gray Apple iPhone, seized from Jhon Manuel Guerrero Hernandez (pictured directly above)**






**3. Silver Cricket smartphone, seized from the driver-side door pocket of the Nissan Altima (IMEI: 863454071610625); (pictured directly above)**



4. **Green Cricket smartphone, seized from the driver-side door pocket of the Nissan Altima; (pictured directly above)**




5. **Black Samsung smartphone, seized from the driver-side door pocket of the Nissan Altima (IMEI 355819213923075); (pictured directly above)**

 

6. **Black Apple iPhone, seized from the driver-side door pocket of the Nissan Altima; (pictured directly above)**

 

7. **Black Apple iPhone, seized from the driver-side door pocket of the Nissan Altima; (pictured directly above)**




**8. Red Apple iPhone, seized from the driver-side door pocket of the Nissan Altima; (pictured directly above)**

# ATTACHMENT B

## LIST OF ITEMS TO BE SEIZED

1. All records on the **SUBJECT DEVICES**, described in **Attachment A**, that relate to violations of 21 U.S.C. § 846, including:

a. any information recording HERNANDEZ'S, BARRERA's, SOTO's, or LLAMAS' schedule or travel;

b. lists of customers and co-conspirators, and related identifying information including images, videos, and audio recordings;

c. records of communications with customers, co-conspirators, or others regarding the possession, transportation, or distribution of controlled substances, whether such communications be a telephone call, text message (e.g., SMS or MMS), instant message, audio message, video message, or communication through an application stored on the **SUBJECT DEVICES**;

d. images or videos of drugs or firearms;

e. records detailing the types, quantity, and prices of drugs as well as dates, places, and amounts of specific drug-related transactions;

f. any information related to the sources of drugs, including: names, addresses, phone numbers, or any other identifying information;

g. any information related to the planning and coordination of transporting drugs;

h. any audio recordings, pictures, video recordings, or still-captured images on the **SUBJECT DEVICES** related to the purchase, sale, transportation, storage, or distribution of drugs or the collection, transfer, or laundering of drug proceeds;

i. all bank records, checks, credit card bills, account information, and other financial records;

j. all records, including internet usage history, related to drug trafficking, including package tracking, electronic or internet mail communications, and electronic payment receipts;

k. any location data related to the acquisition, transportation, or distribution of drugs;

l. evidence of user attribution showing who used or owned the **SUBJECT DEVICES** at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, associated accounts, documents, and browsing history:

1. records of Internet Protocol addresses used,

2. records of Internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, and records of user-typed web addresses, and

3. photographs, logs, phonebooks, saved usernames and passwords, and documents; and

m. contextual information necessary to understand the evidence described in the attachment.

As used above, the terms "records" and "information" include all the foregoing items of evidence in whatever form and by whatever means they may have been created or stored on the **SUBJECT DEVICES**.